NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DELAWARE RIVERKEEPER NETWORK, and the DELAWARE RIVERKEEPER, <br><br> Plaintiffs, <br><br> v. <br><br> DELAWARE RIVER BASIN COMMISSION, and Carol COLLIER, in her official capacity as Executive Director of the Delaware River Basin Commission, <br><br> Defendants. | Civil No. 10-5639 (AET) <br><br> **OPINION** |

THOMPSON, U.S.D.J.

## I. INTRODUCTION

This matter has come before the Court upon the Motion to Join and/or Dismiss [docket # 9] filed by Defendants Delaware River Basin Commission ("DRBC") and Carol Collier. Plaintiffs Delaware Riverkeeper Network ("DRN") and the Delaware Riverkeeper oppose the motion [15]. The Court has decided the motion upon the submissions of both parties and without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons stated below, Defendants' motion to join is granted and Defendants' motion to dismiss Collier as a defendant is granted.

## II. BACKGROUND[1]

This case involves Plaintiffs'[2] appeal of the Delaware River Basin Commission's ("DRBC" or "Commission") decision authorizing Stone Energy Corporation to withdraw up to 0.7 million gallons of water per day from the West Branch of the Lackawaxen River (WBLR).

The DRBC is a federal-interstate compact agency that was created pursuant to the 1961 Delaware River Basin Compact ("Compact"), in order to coordinate the management of water resources among private enterprise and federal, state, and local governments. *See* Pub. L. 87-328, 75 Stat. 588 (1961); *see also* Compact, *available at* http://www.state.nj.us/drbc/regs/compa.pdf. The DRBC implements the Compact's directives through the Delaware River Basin Water Code ("WC"), 18 C.F.R. § 410, and the Administrative Manual: Rules of Practice and Procedure ("RPP"), *see* 18 C.F.R. §§ 401.81–90; *see also* RPP, *available at* http://www.state.nj.us/drbc/regs/rules.pdf.

The Water Code states that "[a]ll projects involving a transfer of water into or out of the Delaware Basin must be submitted to the Commission for review and determination" under the Compact. (Compl. ¶ 17.) It is "the policy of the Commission to discourage the exportation of water from the Delaware River Basin." (Compl. ¶ 20 (citing WC § 2.30.2).) Section 2.30.3 of the Code states that the Commission's "review and consideration of any public or private project involving the importation or exportation of water shall be conducted pursuant to this policy and shall include assessments of the water resource and economic impacts of the project and of all

---

[1] The facts in this section are taken from the Complaint as well as matters of public record such as the Delaware River Basin Compact and the Rules of Practice and Procedure, both of which also happen to form the basis of Plaintiffs' claims. *See Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (stating that courts deciding Rule 12(b)(6) motions to dismiss may consider "allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

[2] Plaintiff DRN is a non-profit organization dedicated to protecting and restoring the Delaware River through environmental advocacy and law enforcement efforts. (Compl. ¶ 2.) Plaintiff the Delaware Riverkeeper, Maya van Rossum, is a privately funded ombudsman who advocates on behalf of the DRN. (*Id.* at ¶ 3.)

alternatives to any water exportation or wastewater importation project." (WC § 2.30.3.) Accordingly, project applicants must address the economic, social, and water-resource impacts of each alternative; the amount, timing and duration of the transfer and its relation to flow requirements; the volume of the transfer and its relationship to other Commission decisions as well as the quantity of other diversions; and any significant benefits or impairment to the Delaware River Basin as a result of the transfer. (WC § 2.30.4.) In reviewing projects, the Commission must also ensure that "no measurable change" to existing water quality occurs at "Boundary and Interstate Control Points" with respect to Special Protection Waters such as the Delaware River. (*Id.* at ¶ 24 (quoting WC § 3.10.3.A.2.b.1)).) Additionally, applicants pursuing projects located in the drainage area of Special Protection Waters must submit a "Non-Point Source Pollution Control Plan." (*Id.* at ¶ 25 (citing WC § 3.10.3A.2.e).)

Under the RPP, a party may request a hearing to review a decision made by the Commission within thirty days of the decision. (*Id.* § 2.6.1C.) The Commission will grant a hearing if it determines that an adequate record regarding the decision is unavailable, the case involves an Executive Director determination requiring further action by the Commission, or a hearing is necessary or desirable. (*Id.* § 2.6.2A.) Any "final Commission action" is subject to judicial review, as long as the appeal is filed within forty-five days of final Commission action. (*Id.* § 2.6.10.)

On March 5, 2009, Stone Energy Corporation ("Stone Energy") submitted to the DRBC a docket application requesting approval to withdraw up to 0.7 million gallons of water per day from the WBLR for the purposes of extracting natural gas from shale formations within the Delaware River Basin's drainage area. (Compl. ¶ 27.) On February 24, 2010, the DRBC held a public hearing, in which Plaintiff DRN participated, regarding Stone Energy's application. (*Id.*

at ¶ 30.)  The DRBC approved the docket on July 14.  (*Id.* at ¶ 31.)  Plaintiff DRN submitted a request for a hearing regarding the DRBC's decision on August 13, which was subsequently denied on September 15.  (*Id.* at ¶ 32–33.)

Plaintiffs timely filed the Complaint [1] on November 1, 2010.  Plaintiffs' Complaint alleges that the diminution of the total flow of the WBLR resulting from Stone Energy's water withdrawal could cause harm to the aquatic community and jeopardize water quality in the WBLR.  (*Id.* at ¶ 29.)  The Complaint also highlights a "Determination" issued by the DRBC's Executive Director on May 19, 2009, that stated: "[A]s a result of water withdrawals, wastewater disposal and other activities, natural gas extraction projects in these shale formations may individually or cumulatively affect the water quality of Special Protection Waters by altering their physical, biological, chemical or hydrological characteristics."  (*Id*. at ¶ 28.)  Plaintiffs claim that Defendants approved the docket without properly applying the standards detailed in the Water Code or requiring Stone Energy to submit information and exhibits required under the RPP.  (*Id*. at ¶¶ 36–40.)  Plaintiffs further claim that Defendants failed to ensure that the docket would not cause any "measurable change" in water quality and also failed to require a "non-point source pollution control plan" prior to approval.  (*Id.* at ¶¶ 42–45.)  Plaintiffs seek declaratory judgment that Defendants' actions were arbitrary and capricious; an injunction prohibiting Defendants from permitting Stone Energy to proceed with water withdrawals until Defendants have complied with statutory and regulatory requirements; and attorneys' fees and costs.  (*Id.* at 11.)

On April 1, Defendants filed a motion to join Stone Energy as an indispensable party under Federal Rule of Civil Procedure 19, or otherwise dismiss for failure to join under Federal Rule of Civil Procedure 12(b)(7).  (Br. in Supp. 7–18) [9].  Defendants also move to dismiss

Defendant Collier under Rule 12(b)(6) on the ground that she is incapable of granting the requested relief and therefore is not a proper party. (*Id.* at 18–20.) Plaintiffs oppose the motion, arguing that Stone Energy is not a necessary party, but that, in the alternative, it may feasibly be joined. (Br. in Opp'n 14–21.) Plaintiffs further argue that the claims against Collier are to be treated as claims against the Commission. (*Id.* at 21.)

## III. ANALYSIS

### A. Rule 12(b)(7) Motion to Dismiss for Failure to Join Indispensable Party

Federal Rule of Civil Procedure 12(b)(7) provides that an action may be dismissed due to a plaintiff's failure to join a party under Rule 19. In considering such claims, courts employ a three-part analysis that examines: "(1) whether it is necessary that the absent party be joined; (2) whether it is possible for the absent necessary party to be joined; and (3) if joinder of the absent party is not feasible, whether 'in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.'" *GenScript Corp. v. AA PEPTIDES, LLC*, No. 09-4889, 2010 WL 2950294, at *2 (D.N.J. July 21, 2010) (quoting *Fiscus v. Combus Fin. AG,* No. 03-1328, 2007 WL 4164388, at *12 (D.N.J. Nov. 20, 2007) and Fed. R. Civ. P. 19).

#### 1. Necessity of Joinder

Rule 19(a) requires joinder of parties "subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction" under one of three circumstances: (1) where the court "cannot afford complete relief among existing parties;" (2) where the absent party "claims an interest relating to the subject of the action" and that party's absence may "as a practical matter impair or impede the person's ability to protect the interest;" or (3) where the

absence of the party claiming an interest may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

We note as an initial matter that joinder of Stone Energy will not deprive the Court of jurisdiction, given that Plaintiffs' Complaint is based on federal question jurisdiction. *See Princeton Biochem., Inc. v. Beckman Coulter, Inc.*, 223 F.R.D. 326, 330 (D.N.J. 2004) (stating that party's "joinder will not deprive the Court of jurisdiction, as jurisdiction in this action is premised on 28 U.S.C. § 1331 (federal question), not 28 U.S.C. § 1332"); *see also L.K. ex rel. Henderson v. N.C. State Bd. of Educ.*, No. 08-0085, 2009 WL 3172129, at * 8 (E.D.N.C. Oct. 1, 2009) (stating that joinder would not deprive the court of jurisdiction based on federal question); *Crawley v. Bragg*, No. 07-0054, 2008 WL 743972, at *5 (M.D. Tenn. Mar. 19, 2008) (same). Furthermore, as Stone Energy is incorporated and headquartered in the United States, (*see* Br. in Supp. 12–13), it is subject to service of process under Federal Rule of Civil Procedure 4(h).

Defendants assert that Stone Energy is a necessary party under the second prong of Rule 19(a)(1). (Br. in Supp. 14.) We agree. To begin with, Stone Energy has an interest relating to the subject of this action. The Prayer for Relief in Plaintiffs' Complaint requests "injunctive relief enjoining Defendants from permitting Stone Energy Corporation to proceed with water withdrawals as described in Docket 2009-13-1 until such times [sic] as Defendants have fully complied with all statutory and regulatory requirements under the Delaware River Basin Compact, Water Code, and Delaware River Basin Administrative Manual: Rules of Practice and Procedure." (Compl. 11.) We find that such an order by the Commission would impact Stone Energy's interest in proceeding with the authorized water withdrawals.

The question, then, is whether Stone Energy's absence would impair or impede its ability to protect its interests. Plaintiffs maintain that Stone Energy's interests are adequately protected by the existing Defendants. (Br. in Opp'n 17–18.) Specifically, Plaintiffs rely on *Ohio Valley Environmental Coalition v. Bulen*, in which a coalition of environmental groups challenged the Army Corps of Engineers' issuance of a particular type of general permit allowing discharge of dredged material. 429 F.3d 493, 495 (4th Cir. 2005). There, the Fourth Circuit affirmed the district court's holding that the absent permit holders did not need to be joined as necessary parties because the existing parties to the action included coal associations whose members had operations similarly dependent on the validity of the permit type. *Id.* at 504–05. Here, by contrast, the Defendants' interests do not so neatly align with Stone Energy's. True, the Commission will likely seek to uphold the actions it took which incidentally favored Stone Energy, but it does not have the same interest in vigorously defending Stone Energy's pecuniary interests in water withdrawal for its natural gas exploration activities.

Therefore, we find that Stone Energy is a necessary party.

### 2. Feasibility of Joinder

Having determined that Stone Energy is a necessary party under the second prong of 19(a), we need not discuss the first or third prongs, and we instead proceed to consider whether it is feasible to join Stone Energy in this action. Specifically, even though joinder would not defeat subject-matter jurisdiction, we must address whether the Court has personal jurisdiction over Stone Energy. *See Graco, Inc. v. PM Global, Inc.*, No. 08-1304, 2009 WL 904010, at *8 (D.N.J. Mar. 31, 2009) (stating that joinder is not be feasible if "it would destroy diversity, or the court lacks personal jurisdiction over the absentee"); *Sch. Dist. of City of Pontiac v. Sec. of U.S. Dep't*

*of Educ.*, 584 F.3d 253, 301 (6th Cir. 2009); *Askew v. Sheriff of Cook Cnty., Ill.*, 568 F.3d 632, 634–35 (7th Cir. 2009). We conclude that it does.

New Jersey's long-arm statute allows the exercise of personal jurisdiction to the limits set by the Fourteenth Amendment's Due Process Clause. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). The due process clause requires that nonresident defendants have sufficient "minimum contacts" with the forum state so that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 299 (3d Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Having minimum contacts with a forum provides 'fair warning' to a defendant that he or she may be subject to suit in that state." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). A federal court may have either specific or general personal jurisdiction over a defendant. General personal jurisdiction exists if the defendant has systematic and continuous contacts with the forum state. *Id.* (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). Where the defendant's contacts do not rise to that level, specific personal jurisdiction may still exist where the defendant has purposefully directed his or her activities at the forum state. *Burger King Corp.*, 471 U.S. at 471; *see also Kehm Oil*, 537 F.3d at 299.

The parties appear to agree that Stone Energy submitted itself to the exercise of specific jurisdiction in New Jersey by negotiating a settlement agreement with the DRBC in New Jersey and subsequently submitting a docket application to the DRBC. *See* (Br. in Supp. 13); (Br. in Opp'n 20). We note here the difficulty of undertaking a traditional "purposeful direction" analysis given that the allegations in Plaintiffs' Complaint primarily concern the actions taken by the Commission rather than Stone Energy, which is not named as a defendant. Applying a more

flexible approach in light of this unusual posture, we find that Stone Energy's settlement negotiations with DRBC and its submission of a docket application provided fair warning that it might have to further defend its interests in a New Jersey federal court. This conclusion is buttressed by the fact that the RPP states that appeals of final Commission actions may be "filed with an appropriate federal court," (RPP § 2.6.10), and the Compact provides federal district courts with "original jurisdiction of all cases or controversies arising under the Compact[,]" (*see* Compact § 15.1(p)).

Thus, Stone Energy may feasibly be joined under Rule 19, and we need not dismiss this action pursuant to Rule 12(b)(7).

### B. Rule 12(b)(6) Motion to Dismiss Defendant Collier in her Official Capacity

Defendants move to dismiss Collier from this action because she did not provide the DRBC approval and does not have the authority to provide Plaintiffs the relief they request. (Br. in Supp. 18.) Specifically, Defendants point out that it is the Commission and not the Executive Director that holds the authority to review and approve project applications. (*Id.* at 19); (*see* Compact § 2.1.4.) Furthermore, the Appeals provision of the Compact provides that parties may appeal "any final Commission action[,]" as opposed to any Executive Director action. (Compact § 2.6.10.) Plaintiffs assert that they named Collier in her official capacity in order to bring suit against the entity on behalf of which she acted—namely, the DRBC. (Br. in Opp'n 21.) However, Plaintiffs' argument begs the question of why they would need to name Collier in her official capacity when they have already named the DRBC as a Defendant. At best, inclusion of Collier in her official capacity would be redundant. Accordingly, we will dismiss Executive Director Carol Collier from this action.

-10-

## IV. CONCLUSION

For the reasons stated above, and for good cause shown, Defendants' motion to join is granted, and Defendants' motion to dismiss Defendant Collier from this action is granted. An appropriate order will follow.

                                         */s/ Anne E. Thompson*
                                         ANNE E. THOMPSON, U.S.D.J.

DATE:   August 29, 2011