UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DELAWARE RIVERKEEPER NETWORK and THE DELAWARE RIVERKEEPER,**<br><br>Plaintiffs,<br><br>v.<br><br>**DELAWARE RIVER BASIN COMMISSION and STONE ENERGY CORPORATION,**<br><br>Defendants. | Civil Action No. 10-5639 (AET)(LHG)<br><br><u>**OPINION AND ORDER**</u> |

**THIS MATTER** comes before the Court by a second motion filed by Plaintiffs Delaware Riverkeeper Network and the Delaware Riverkeeper ("Plaintiffs" or the "DRN") [Docket Entry No. 56], seeking an Order compelling the production of documents from Defendant Delaware River Basin Commission (the "DRBC") that the DRBC has withheld on the basis of deliberative process privilege. ("Plf. Brief"). The Motion is opposed by the DRBC, [Docket Entry No. 57] ("Def. Brief"), and the DRN replied on October 15, 2013. [Docket Entry No. 58] ("Plf. Reply").

The Court has considered the motion on the submissions without oral argument, pursuant to Fed. R. Civ. P. 78. For the following reasons, the motion is DENIED.

    I.    BACKGROUND

The instant case concerns the DRBC's decision to permit Defendant Stone Energy Corporation ("Stone Energy") to withdraw up to 0.7 million gallons of water per day from the West Branch of the Lackawaxen River in Wayne County, Pennsylvania. The DRBC is a federal-

1

interstate compact agency that was created pursuant to the 1961 Delaware River Basin Compact (the "Compact") and is charged with coordinating the management of water resources among private enterprise and federal, state and local governments.  *See* Pub. L. 87-328, 75 Stat. 588 (1961).  The DRBC is comprised of the governors of Delaware, New Jersey, New York, and Pennsylvania, *ex officio*, as well as a federal representative.  Amended Compl. ¶ 7.

The DRBC implements the Compact's directives through the Delaware River Basin Water Code (the "Water Code"), 18 C.F.R. § 410, as well as the Delaware River Basin Administrative Manual: Rules of Practice and Procedure.  Amended Compl. ¶ 17.  The Water Code provides, in relevant part, that "[a]ll projects involving a transfer of water in or out of the Delaware Basin must be submitted to the Commission for review and determination under Section 3.8 of the Compact."  *Id.* at 18.  The Water Code mandates that in making decisions concerning the "waters of the Delaware Basin . . . it shall be the policy of the Commission to discourage the exportation of water from the Delaware River Basin."  *Id.* at 21.  In addition, the Water Code states that DRBC's "review and consideration of any public or private project involving the importation or exportation of water shall be conducted pursuant to this policy and shall include assessments of the water resource and economic impacts of the project and of all alternatives to any water exportation or wastewater importation project."  *Id.* at 22.

On March 5, 2009, Stone Energy submitted an application or "docket" to the DRBC to withdraw surface water from the West Branch of the Lackawaxen River.  Amended Compl. ¶ 28.  On February 24, 2010, the DRBC held a public hearing on Stone Energy's application.  *Id.* at 33.  On July 14, 2010, the DRBC made public its decision to approve the application.  *Id.* at 34.  The DRN requested a hearing regarding the application on August 13, 2010, which the DRBC denied on September 15, 2010.  Thereafter, on or around November 1, 2010, Plaintiffs filed a Complaint

challenging the DRBC's approval of Stone Energy's water withdrawal docket, D-2009-13-1. Compl. ¶ 1.  Plaintiffs filed an Amended Complaint on October 24, 2011, alleging that the DRBC "approved this massive extractive use of the Delaware River's aquatic resources without full compliance with applicable procedural and substantive requirements and without ensuring required levels of protection for water quality in Special Protected Waters areas."  Amended Compl. ¶ 1.

On August 3, 2012, the undersigned issued a Scheduling Order that established "a briefing schedule to resolve the parties' outstanding disputes over the administrative record." [Docket Entry No. 38].  The Order provided that the DRBC was to produce a final certified administrative record by August 15, 2012 and that Plaintiffs were to file any motions to resolve outstanding issues regarding the administrative record by September 10, 2012.

In accordance with the Scheduling Order, DRBC produced its third iteration of the Administrative Record (the "Record").  Plf. Brief at 2.  The Record comprises approximately "6,000 pages of material that the Commissioners considered, analyzed and/or had available to them in connection with their consideration of Stone's application," and includes, among other items, the working file of DRBC Project Review staff, public comments by individuals and organizations, a transcript of the public hearing, the Commission's meeting minutes, a DRBC Staff PowerPoint presentation, and related Commission docket approvals.  Def. Brief at 6.

In addition, DRBC provided the Certification of Administrative Record and Affidavit Regarding Claim of Privilege of Executive Director Carol Collier ("Collier Affidavit"), identifying 43 documents that were withheld from the Record based on either the deliberative process or attorney-client privilege.  Def. Brief at 7; Def. Brief, Ex. D.  Executive Director Collier groups the withheld documents into the following four categories: (1) pre-decisional

3

handwritten personal notes (items1-6, 8-9, 32-35); (2) pre-decisional deliberative communications among DRBC staff and DRBC Commissioners or their staff and related communications (items 7, 10, 12-17, 18A, 19-20, 22-24, 27, 30-31, 36-41); (3) pre-decisional deliberative communications between DRBC staff and staff members of other government agencies (items 11, 18, 21, 25-26); and (4) communications between members of the Commission staff and the Commissioners' General Counsel or Assistant General Counsel (items 28, 29). Def. Brief, Ex. D.

On September 10, 2012, Plaintiffs filed a first motion to compel the production of the withheld documents. [Docket Entry No. 39]. The Court denied that motion without prejudice, but directed Defendants to supplement the privilege log and the Collier Affidavit. [Docket Entry No. 46].

Following the Court's Order, and in consultation with Plaintiffs, the DRBC twice supplemented its privilege log and the Collier Affidavit. Plf. Brief, at 1; Def. Brief, at 5-6. Nevertheless, the parties were unable to completely resolve their differences with respect to the withheld documents and DRN filed the instant motion.

## II. LEGAL STANDARD

The deliberative process privilege is the most frequently invoked form of executive privilege. *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). The purpose of the privilege is to "prevent injury to the quality of agency decisions which could result from premature or indiscriminate disclosure" of "deliberations comprising part of a process by which government decisions and policies are formulated." *Resident Advisory Board v. Rizzo*, 97 F.R.D. 749, 751 (E.D. Pa. 1983); *see also National Labor Relations Board v. Sears, Roebuck & Co.*,

("*NLRB*"),421 U.S. 132, 150 (1975); *Conoco Inc. v. United States Dep't of Justice*, 687 F.2d 724, 727 (3d Cir. 1982). The privilege recognizes "that were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." *First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 (D.C. Cir. 1994) (quotation marks and internal ellipses omitted).

That said, "the deliberative process privilege, like other executive privileges, should be narrowly construed." *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 856 (3d Cir. 1995) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)). Because the privilege does not protect all communications made by government officials, the court must initially determine whether the material the government seeks to protect comprises part of a process by which a government agency formed a decision or policy. *NLRB*, 421 U.S. at 150. The initial burden of establishing whether the deliberative process privilege applies is on the government. *Redland*, 55 F.3d at 854.

In order to rely on the deliberative process privilege, the party invoking it must meet the following three procedural requirements: (1) the head of the department which has control over the matter must make a formal claim of privilege after actually considering the matter; (2) the responsible agency official must provide precise and certain reasons for asserting the privilege over the government information or documents at issue; and (3) the government information or documents sought to be shielded from disclosure must be identified and described. *United States v. Ernstoff*, 183 F.R.D. 148, 152 (D.N.J. 1998).

After these procedural hurdles are met, the Court must determine whether the government has substantively established a *prima facie* case that the deliberative process privilege applies. *Ernstoff*, 183 F.R.D. at 152. To do so, the government must initially show that

the material sought to be protected is pre-decisional and deliberative. *Abdelfattah v. United States Dep't of Homeland Sec.*, 488 F.3d 178, 183 (3d Cir. 2007). In order to be pre-decisional, the document in question "must concern an anticipated agency decision and have been generated prior to the actual decision being reached; it cannot involve a communication concerning the decision made after the decision has already been adopted." *United States v. Pechiney Plastics Packaging, Inc.*, Civ. No. 09-5692, 2013 WL 1163514, at *13 (D.N.J. March 19, 2013). To be deliberative, a document must reflect "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB*, 421 U.S. at 151- 52. In other words, the material must "reflect[] the give and take of the consultative process." *New Jersey v. RPI Energy Mid-Atlantic Power Holdings, LLC,* Civ. No. 07-5298, 2013 WL 272763, at *1 (E.D. Pa. Jan. 24, 2013) (citing *Rizzo,* 97 F.R.D. at 753). In addition, to the extent that the documents reflect "personal opinions of the writer rather than the policy of the agency," such documents are protected by the privilege because disclosure "would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Because the privilege extends only to deliberative documents, it does not typically apply to documents reflecting "compiled factual material or purely factual material contained in deliberative memoranda and severable from its context." *Environmental Protection Agency v. Mink*, 410 U.S. 73, 88 (1973). However, "factual information that itself reveals the deliberative process and cannot be severed from the deliberative context is protected.*"* *In re U.S.*, 321 Fed. Appx. 953, 959 (Fed. Cir. 2009). In deciding whether certain material is deliberative, "[c]ourts focus less on the nature of the materials sought and more on the effect of the materials' release:

the key question in [such] cases became whether the disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id*. (quoting *Dudman Commc'ns v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).

Once the government satisfies these threshold requirements, the deliberative process privilege is applicable. The Court's inquiry, however, does not end there because the privilege is not absolute. *Redland*, 55 F.3d at 854. Instead, once the agency demonstrates that the privilege applies, the party seeking discovery has the opportunity to make a showing of sufficient need for the otherwise privileged material. *Rizzo*, 97 F.R.D. at 753. In that regard, the Court must balance the need for the documents against the reasons for confidentiality asserted by the government. In conducting this balancing test, a court should consider: (1) the relevance of the evidence sought; (2) the availability of other evidence; (3) the seriousness of the litigation and issues involved; (4) the role of the government in the litigation; and (5) the potential for inhibiting candor by government employees resulting from such disclosure. *Redland*, 55 F.3d at 854.

### III. ANALYSIS

#### A. Whether the Deliberative Process Privilege Applies in this Instance

For the first time in this, their second motion to compel disputing the DRBC's assertion of the deliberative process privilege, Plaintiffs argue that the privilege should not apply in this case. Plf. Brief at 6-7. Plaintiffs assert that their complaint challenges the decision-making process of the DRBC. *Id*. Based on the document descriptions the DRBC provided, Plaintiffs believe that these documents bear directly on their challenge. *Id*. They urge that under these

circumstances the Court should sidestep the balancing test of *Redland* and find directly that the documents are not protected by the deliberative process privilege.  *Id.*  For this proposition, Plaintiffs cite cases holding that the privilege does not apply where an agency's decision-making process is itself challenged and the agency's subjective intent is questioned.  *Id.* at 4-6 (citing *Griffin-El v. Beard*, Civ No. 06-2719, 2009 WL 1606891 (E.D. Pa. June 8, 2009); *Ebbert v. Nassau County*, Civ. No. 05-5445, 2007 WL 674725 (E.D.N.Y. March 5, 2007); *Mr. and Mrs. B. v. Bd. of Educ. of Syosset Cent. School District*, Civ. No. 96-5752, 35 F.Supp. 2d 224 (E.D.N.Y. 1998)).  Plaintiffs concede, however, that they have not challenged the subjective intent of the DRBC.  Plf. Brief at 7.  Rather, they compare this suit to *New York v. Salazar*, 701 F.Supp. 2d 224 (N.D.N.Y. 2010), in which the court extended privilege preemption to encompass a situation where the agency's decision-making process while its intent was not.  Plf. Brief at 7.

The DRBC opposes Plaintiffs' attempt to preempt the deliberative process privilege.  First, it contends that Plaintiffs waived this argument by failing to raise it as part of their first motion to compel.  Def. Brief at 8-9.  The DRBC next argues that Plaintiffs' position is barred by the law of the case.  *Id.* at 9.  To that end, it refers to the Court's earlier Order to supplement the privilege log and Collier Affidavit, the DRBC's compliance with that Order, and a statement from Plaintiffs that they no longer contest the procedural sufficiency of the administrative record provided by the DRBC.  *Id.*  The DRBC distinguishes Plaintiffs' cases and observes that none of the authorities Plaintiffs cite is binding on the Court.  *Id.* at 11.  Finally, the DRBC disputes Plaintiffs' attempts to frame their complaint as a challenge to its decision-making process.  According to the DRBC, the challenge is to a final agency decision, not to the process by which the agency reached that decision.  *Id.* at 11-14.

8

Although it might have been more efficient for Plaintiffs to raise this argument in their first motion to compel, the Court is unwilling to impose so strict a rule as waiver under these circumstances. The DRBC has directed the Court to no legal authority to support its waiver argument, nor has it claimed to suffer prejudice as a result of Plaintiffs' late-raised argument.

The Court likewise declines to adopt the DRBC's law of the case reasoning. The DRBC has provided no authority for its application here. Moreover, Plaintiffs' Reply provides a more likely explanation for its statement "accepting the procedural sufficiency of administrative record": it refers to conceding the *procedural* requirements for invoking the deliberative process privilege, rather than forfeiting their dispute to the appropriateness of applying the privilege to these documents.

Plaintiffs cite cases finding that the deliberative process privilege was not applicable when the intent of the decision-maker was contested. There is no challenge in this case, however, to the intent of the DRBC. Plaintiffs concede as much. They instead argue for an extension of that case law, urging that the deliberative process privilege should also dissipate when the decision-making process of an agency is challenged under the arbitrary and capricious standard of the Administrative Procedures Act *without* a contemporaneous accusation as to the agency's intent. As support for their position, Plaintiffs rely on *New York v. Salazar*.

*Salazar* involved a challenge to the Department of the Interior's ("the DOI") decision to take over 13,000 acres of land in New York in trust for the benefit of the Oneida Indian Nation. The *Salazar* plaintiffs sought documents withheld by the DOI based on deliberative process privilege. The court found that the DOI's "decision-making process [was] at the heart of the action" and ultimately found that deliberative process privilege was inapplicable. 701 F.Supp.

9

2d at 238.  Here, the DRN claims that, as in *Salazar*, the heart of the case before the Court lies in the decision-making process at the DRBC.

On the Court's read, however, *Salazar* does not extend as far as Plaintiffs advocate. *Salazar* involved "a variety of claims including several under the Administrative Procedures Act… arguing both that the [record of decision] is arbitrary and capricious, and contrary to law *and that the process through which it was issued was infected by bias, bad faith, and improper motives*."  701 F.Supp. 2d at 229-230 (emphasis added).  Even the portion of the *Salazar* opinion Plaintiffs quote at length appears to runs contrary to their position:

> [The plaintiffs'] second amended complaint alleges that the process was not open, was biased in favor of the OIN, was contrary to DOI policy and that the underlying statute failed to adequately consider the environmental impacts of the contemplated action as required under NEPA, and violated plaintiffs' constitutional right to due process.  The central theme of many of plaintiffs' claims [was] that the deliberative process privilege itself was fatally flawed and infected by arbitrary conduct and abuse of discretion.  In light of these allegations, the deliberative process privilege cannot serve as an impermeable shield preventing plaintiffs from obtaining proof of their claims; instead the privilege must be considered to have dissipated.

*Id.* at 237-238 (emphasis added) (citing *Children First Found., Inc.*, 2007 WL 43444915, at *5). The phrase "these allegations" in the last quoted sentence refers back to the prior quoted sentences, which include an allegation that the DOI "was biased in favor of the OIN."  The allegation of bias on the part of an agency is, by definition, a claim that its intent was improper. Thus, the conclusion the *Salazar* court reached was explicitly based at least in part upon allegations of improper intent, an element not alleged here.

The *Children First* case cited by the court in *Salazar* is also consistent with this view. *Children First* involved accusations that a state agency "*engaged in and facilitated content-based and viewpoint-based discrimination* and the exercise of unbridled discretion during the course of

10

their review and ultimate denial of the requested [license] plate designs." 2007 WL 4344914, at *5. Inasmuch as *Children First* involved accusations of agency discrimination, that case, like *Salazar*, also involved questions directed to agency intent.

Yet one step further back, the *Children First* case itself acknowledges that many cases cite to a decision issued by the U.S. Court of Appeals for the D.C. Circuit in *In re Subpoena Duces Tecum Served on the Office of the Comptroller*, 145 F.3d 1422, 1424 (D.C. Cir. 1998), for the principle that the deliberative process privilege can "evaporate" based on the nature of the suit. 2007 WL 4344915, at *7 (citing *In re Subpoena Duces Tecum,* 145 F.3d at 1424). *Children First* goes on to observe that the D.C. Circuit later modified its holding in that same case: "our holding that the deliberative process privilege is unavailable is limited to those circumstances in which the cause of action is directed at the agency's subjective motivation." 2008 WL 4344915, at *7 (quoting *In re Subpoena Duces Tecum Served on the Office of the Comptroller*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998).

Courts in the Third Circuit have frequently cited and relied upon the case law of the U.S. Court of Appeals for the D.C. Circuit when the government invokes the deliberative process privilege, *Griffin-El*, 2007 WL 1606891, at *6 n 3 (citing cases), and this Court finds the limitation imposed by the D.C. Circuit *In re Subpoena Duces Tecum* to be a reasonable one. Improper motivation on the part of a government agency should be at issue before a court considers bypassing the deliberative process privilege. In such cases, the party seeking documents has cause to doubt the veracity of the reasons the agency might be proffering to justify its final determination. From a practical standpoint, if an exception to the deliberative process privilege provided that *any* challenge to the process by which an agency reached a decision was sufficient, the exception might swallow the rule.

11

In this case, Plaintiffs have not challenged the subjective motivation of the DRN. The Court therefore finds the deliberative process privilege is applicable within the context of the present suit.

### B. Whether the DRBC Has Met the Procedural Requirements of Asserting the Deliberative Process Privilege

As noted above, the DRN has affirmatively stated that it does not contest the DRBC's adherence to the latter two procedural requirements for invoking the deliberative process privilege: it concedes that the DRBC has supplied the required certification with a log that advances reasons for asserting the privilege. Reply at 3-4 ("Plaintiffs' statement…means that Plaintiffs would no longer pursue…the second and third prongs of the test set forth by the Court in *Ernstoff*.")(quotation marks omitted). With respect to the first prong, the DRN has not explicitly conceded, nor has it argued that Ms. Collier's affidavit fails to meet it.

The Court has reviewed the Collier Affidavit. As part of her statement, Collier asserts that she is the chief executive of the DRBC and she makes a formal claim of privilege as to the withheld documents after having reviewed them. Collier Affidavit, ¶¶ 1, 8, 10(q). The Court finds that the Collier Affidavit meets the first prong of the procedural requirements for asserting the deliberative process privilege. Inasmuch as all three prongs have been satisfied, the Court further finds that the DRBC has met the procedural requirements for asserting its privilege.

### C. Whether, on Balance, the Review Sheets are Entitled to Deliberative Process Protection

The Court has conducted a careful *in camera* review of the 11 contested documents. Based on that review, the Court agrees with the DRBC's assertion of the deliberative process

privilege as to the ten documents identified on the DRBC privilege log by reference numbers 11, 13, 15, 16, 17, 18, 19, 20, 22, and 24.

The sole document that gave the Court pause during its review was document number 21, an email chain initiated on January 14, 2010 by Kelly Anderson.  Therein, the DRBC redacted a table that spanned from pages 21-3 to 21-10, which is contact information for the various Commissioners of the DRBC.  This information is not deliberative; it does not reflect advisory opinions, recommendations, the give and take of the consultative process, or personal opinions that have not been adopted as agency policy.  Accordingly, the Court finds the DRBC's assertion of the deliberative process privilege is in error.  On its face, however, the error is diminished by the fact that the redacted material is of doubtful relevance.  It is very likely that this contact information—some of it apparently personal—for the DRBC Commissioners is of minimal relevance to this case and may be confidential, although not privileged.  Accordingly, the parties are instructed to meet and confer with regard to the content contained in document 21 and the relevance of the redacted information.  The parties are to report to the Court within 10 days of entry of this Order as to whether they need to be heard further as to document 21.

13

For the foregoing reasons, and for good cause shown,

**IT IS** on this **9th** day of **June, 2014**,

**ORDERED** that Plaintiffs' Second Motion to Compel [Docket Entry No. 56] is **DENIED**; and it is further

**ORDERED** that the parties are to meet and confer with respect to the relevance of information set forth in document number 21 at pages 21-3 to 21-10, and to report to the Court on the results of that meet and confer within 10 days of the entry of this Order.

_____
**LOIS H. GOODMAN**
**United States Magistrate Judge**